J-A29008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: PELVIC MESH LITIGATION | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: ETHICON, INC.AND | : | |
| JOHNSON & JOHNSON | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 652 EDA 2018 |

Appeal from the Order February 9, 2018
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  No. 829

BEFORE:   OTT, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED APRIL 03, 2019**

Ethicon, Inc. and Johnson & Johnson (collectively "Ethicon")[1] appeal from the order entered December 4, 2017, as amended on February 9, 2018, granting in part, and denying in part, Ethicon's motion to dismiss based upon lack of personal jurisdiction with respect to certain cases filed by non-resident plaintiffs in this pelvic mesh mass tort litigation.  Specifically, the trial court granted Ethicon's motion to dismiss all cases in which a non-resident plaintiff was implanted with the Prolift+M pelvic mesh device, but denied its motion with respect to non-resident plaintiffs that were implanted with one of eight other pelvic mesh devices, because the mesh in those devices was knitted by a Pennsylvania company, Secant Medical, Inc., and therefore, Pennsylvania

---

* Former Justice specially assigned to the Superior Court.

[1] Ethicon is a "wholly owned subsidiary of [] Johnson & Johnson."  Plaintiff's Master Long Form Complaint and Jury Demand, 5/14/2014, at 2.

could exercise personal jurisdiction over Ethicon. On appeal, Ethicon argues the trial court erred in concluding Pennsylvania had specific jurisdiction over any claims filed by non-resident plaintiffs. For the reasons below, we affirm.

The relevant facts and procedural history are aptly summarized by the trial court as follows:

> By Order dated February 11, 2014, this Court created the In Re Pelvic Mesh Litigation mass tort program for the coordination of all cases in which a plaintiff alleged she suffered injuries as a result of the implementation of a pelvic mesh medical device. [A] "Master Docket" was created to serve as a depository for the filing of pleadings, motions, orders, and other documents common to all pelvic mesh cases; once a document or order has been filed on the Master Docket, it could be incorporated by reference in any other properly filed Motion or Pleading. [A case management order] also required the filing of a Master Long-Form Complaint which made allegations common to all plaintiffs in the litigation; the filing of the Master Long-Form Complaint superseded the pleadings in each individual case. Each individual plaintiff was then required to file a case-specific short-form complaint, which incorporated the Master Long-Form Complaint by reference and set forth the factual circumstances unique to that individual plaintiff.
>
> Various defendants[1] stated their intention to file preliminary objections based on lack of personal jurisdiction in all cases involving plaintiffs who did not reside, or have their pelvic mesh implanted, in Pennsylvania (hereinafter referred to as "non-Pennsylvania plaintiffs"). At the direction of this Court, the defendants filed on the Master Docket a Motion to Dismiss on the grounds of lack of personal jurisdiction, which encompassed all cases filed by non–Pennsylvania plaintiffs. The Court permitted extensive discovery, briefing, and oral argument on the issue of personal jurisdiction. By Order dated March 30, 2015, this Court sustained personal jurisdiction over cases involving non-Pennsylvania plaintiffs, and denied the Motion to Dismiss.

_____
[1] The Master Long-Form Complaint named ten defendants including, Ethicon, Inc., Johnson & Johnson, and Boston Scientific Corp.

In late May 2017 and early June 2017, the United States Supreme Court decided two cases involving personal jurisdiction, **BNSF Ry. Co. v. Tyrell**, 137 S.Ct. 1549 (2017) and **Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County**, 137 S.Ct. 1773 (2017). On June 30, 2017, Defendants Ethicon, Inc., and Johnson & Johnson (herein after referred to as "Moving Defendants") filed a Motion for Reconsideration in which they argued the U.S. Supreme Court's decisions in **Tyrell** and **Bristol-Myers** required this Court to dismiss the claims of non-Pennsylvania plaintiffs due to lack of personal jurisdiction.[2] By Order dated August 1, 2017, and docketed August 2, 2017, this Court granted the Motion for Reconsideration, vacated the March 30, 2015 Order denying the Motion to Dismiss, and ordered further briefing on the issue of personal jurisdiction in light of **Tyrell** and **Bristol-Myers Squibb**.

[2] Defendant Boston Scientific Corp filed a similar Motion for Reconsideration; however, this Court limits its focus to Moving Defendants.

In their brief, the non-Pennsylvania plaintiffs conceded this court lacked general jurisdiction, but argued this Court had specific personal jurisdiction over all cases, including those filed by non-Pennsylvania plaintiffs. The non-Pennsylvania plaintiffs made two arguments in support of specific jurisdiction - 1) the involvement of a Pennsylvania based company, Secant Medical Inc.,[3] in the manufacturing process permitted this Court to exercise specific jurisdiction in cases involving non–Pennsylvania plaintiffs, and 2) this Court has specific personal jurisdiction over the cases of all non-Pennsylvania plaintiffs because Moving Defendants conducted clinical tests and safety studies in and around Allentown, Pennsylvania.[4]

[3] Secant Medical Inc. was originally named as a defendant in the Master Long-Form Complaint; however, for reasons unrelated to the issue of jurisdiction, this Court dismissed Secant Medical Inc. by Order dated August 25, 2014.

[4] Since this Court sustained specific personal jurisdiction under the first argument, the second argument advanced by the non-Pennsylvania plaintiffs will not be addressed.

_____

With respect to the first argument, the non-Pennsylvania plaintiffs produced evidence showing a portion of the manufacturing process for eight pelvic mesh medical devices - Gynemesh/Gynemesh PS, Prolene, Prolift, Prosima, TVT, TVT-Exact, TVT-Obturator, and TVT-Secur - occurred at Secant Medical, Inc.'s Bucks County facility. In the manufacturing process for these eight pelvic mesh medical devices, Moving Defendants use an extrusion process at their facility in Georgia to transform polypropylene resin pellets, known as PROLENE®, into spools of filament. Moving Defendants send the spools of PROLENE® filament to Secant's facility in Perskasie, Bucks County, where Secant knits the filament into mesh according to specifications set forth by Moving Defendants. Secant then returns the knitted mesh to Moving Defendants, who engage in further steps of the manufacturing process.

At oral argument, this Court [i]nquired whether Secant knitted the mesh used in every pelvic mesh medical device produced by Moving Defendants; the parties provided conflicting responses. Accordingly, the Court issued an Order, dated September 15, 2017, and docketed September 18, 2017, requesting post-argument briefing focused on two questions: 1) whether Secant Medical, Inc., was the exclusive provider of mesh used in the pelvic mesh medical devices, and 2) if not, whether it was possible to discern if a particular pelvic mesh medical device contained Secant-provided mesh. The parties conducted discovery relevant to the issues presented in the September 18th Order and filed post-argument briefs in support of their respective positions.

The post-argument discovery revealed two classes of non-Pennsylvania plaintiffs - 1) women implanted with the Prolift+M pelvic mesh medical device, and 2) women implanted with one of eight other pelvic mesh medical devices, Gynemesh/Gynemesh PS, Prolene, Prolift, Prosima, TVT, TVT-Exact, TVT-Obturator, and TVT-Secur, manufactured by Moving Defendants. James Williams, the strategic sourcing manager for Ethicon, testified that between 2001 and 2015, Secant knitted the mesh used in all of the Gynemesh/Gynemesh PS, Prolene, Prolift, Prosima, TVT, TVT-Exact, TVT-Obturator, and TVT-Secur pelvic mesh medical

devices. Secant was not involved in the manufacturing of the Prolift+M.

By Order dated December 4, 2017, and docketed December 5, 2017 on the Master Docket, this Court granted the Motion to Dismiss in part and denied the Motion to Dismiss in part. This Court sustained personal jurisdiction over cases involving non–Pennsylvania plaintiffs implanted with the Gynemesh/Gynemesh PS, Prolene, Prolift, Prosima, TVT, TVT-Exact, TVT-Obturator, or TVT-Secur pelvic mesh medical devices, but found a lack of personal jurisdiction over cases in which the non-Pennsylvania plaintiff was implanted with the Prolift+M pelvic mesh medical device.

Moving Defendants filed a Motion to Amend in which they requested this Court amend its December 4th Order to include the language prescribed by Pa.R.A.P. 311(b)(2). **See** Pa.R.A.P. 311(b)(2) (providing an interlocutory appeal as of right in cases in which the trial court sustained personal jurisdiction if "the court states in the order that a substantial issue of venue or jurisdiction is presented"). On January 2, 2018, a non-Pennsylvania plaintiff who had been implanted with the Prolift+M pelvic mesh medical device, Ronna Moore, appealed the dismissal of her case for lack of personal jurisdiction. In light of the fact a portion of the December 4th Order was subject to appellate review by virtue of Ms. Moore's appeal, this Court believed judicial economy would best be served if an appellate court reviewed the December 4th Order in its entirety. Accordingly, by Order dated February 9, 2018, this Court granted Moving Defendants' Motion to Amend, and added the necessary language from Rule 311(b)(2), thereby granting Moving Defendants an appeal as of right.[5]

_____

[5] By Order dated February 13, 2018, the Superior Court quashed Ms. Moore's appeal. **See Moore v. Ethicon, Inc., et al.**, 175 EDA 2018.

_____

Trial Court Opinion, 5/18/2018, at 1-6 (record citations omitted).  Ethicon filed a timely notice of appeal on February 14, 2018,[2] and the trial court filed its opinion on May 18, 2018.

Thereafter, on June 19, 2018, a panel of this Court issued an opinion in **Hammons v. Ethicon**, 190 A.3d 1248 (Pa Super. 2018), one of the pelvic mesh mass tort cases that has already proceeded to trial.  That case, like the one *sub judice*, involved a non-Pennsylvania plaintiff who was implanted with one of the mesh devices manufactured by Secant.  The panel held, *inter alia*, the trial court properly denied Ethicon's motion to dismiss the action for lack of personal jurisdiction.  **See id.** at 1264.  After this Court denied reargument *en banc* in **Hammons**, Ethicon filed a petition for allowance of appeal in the Pennsylvania Supreme Court.  **See Hammons v. Ethicon**, 458 EAL 2018.  To date, that petition is still pending.  Another pelvic mesh case, which raises the same jurisdictional issue, was scheduled for argument before another panel of this Court in August of 2018.  **See Carlino v. Ethicon**, 1129 EDA 2016.

Prior to that argument, on July 3, 2018, Ethicon filed an application requesting this Court consolidate all three cases – the present case, **Hammons**, and **Carlino** - for consideration by this Court *en banc*; the application was denied on November 13, 2018.  Oral argument on the **Carlino**

---

[2] The trial court did not direct Ethicon to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

appeal proceeded as scheduled on August 8, 2018.[3] Subsequently, on September 27, 2018, Ethicon filed a Petition for Extraordinary Jurisdiction/King's Bench Jurisdiction in the Pennsylvania Supreme Court, requesting the Supreme Court assume jurisdiction over all three appeals. To date, that petition is still pending. **See** 112 EM 2018.

This appeal challenges only the portion of the trial court's December 4, 2017, order that denied Ethicon's motion to dismiss, for lack of jurisdiction, the cases filed by non-resident plaintiffs who were implanted with eight pelvic mesh devices produced by Ethicon, and manufactured, in part, in Pennsylvania by Secant Medical, Inc. ("Secant").[4] For the reasons that follow, we conclude we are bound by the **Hammons** decision.

Our standard of review is well-settled:

> [W]hen deciding a motion to dismiss for lack of personal jurisdiction the court must consider the evidence in the light most favorable to the non-moving party. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or an abuse of discretion. Once the moving party supports its objections to personal jurisdiction, the burden of proving personal jurisdiction is upon the party asserting it. Courts must resolve the question of personal jurisdiction based on the circumstances of each particular case.

**Mendel v. Williams**, 53 A.3d 810, 816–817 (Pa. Super. 2012) (quotation omitted).

---

[3] No decision has been filed in the **Carlino** appeal.

[4] As explained *supra*, the trial court granted Ethicon's motion to dismiss the cases filed by non-resident plaintiffs who were implanted with the Prolift+M device. That ruling is not a subject of this appeal.

A state's authority to exercise personal jurisdiction over a non-resident defendant is limited by the Due Process Clause of the United States Constitution. *Hammons*, *supra*, 190 A.3d at 1261. Generally, personal jurisdiction over a non-resident defendant is permissible "where a defendant ha[s] 'purposefully directed' his activities at the residents of the forum, [so that] he is presumed to have 'fair warning' that he may be called to suit there." *Id.* (citation omitted). "A defendant's activities in the forum State may give rise to either specific jurisdiction or general jurisdiction." *Mendel*, *supra*, 53 A.3d at 817. Here, only specific jurisdiction is at issue as conceded by the non-resident plaintiffs. *See* Plaintiffs-Appellees' Brief at 10.

As this Court explained in *Hammons*, the *Bristol-Myers* decision outlined three requirements that must be met in order for a forum to exercise specific jurisdiction over an out-of-state defendant:

> First, the defendant must have "purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State." *Bristol-Myers*, 137 S.Ct. at 1780. Second, the plaintiff's claim must "arise out of or relate to" the defendant's activities in the forum state. *Id.* at 1785. Third, jurisdiction must be fair and reasonable so as not to offend tradition notions of fair play and substantial justice. *Id.* The fairness factors in the third requirement that a court will consider are "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 1786.

*Hammons*, *supra*, 190 A.3d at 1262.

These considerations are codified in Pennsylvania's long-arm statute, 42 Pa.C.S. § 5322, which provides, in pertinent part:

**(a) General rule.--**A tribunal of this Commonwealth may exercise personal jurisdiction over a person … as to a cause of action or other matter arising from such person:

\* \* \* \*

(3) Causing harm or tortious injury by an act or omission in this Commonwealth.

\* \* \* \*

**(b) Exercise of full constitutional power over nonresidents.--**In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

**(c) Scope of jurisdiction.--**When jurisdiction over a person is based solely upon this section, only a cause of action or other matter arising from acts enumerated in subsection (a), or from acts forming the basis of jurisdiction under subsection (b), may be asserted against him.

42 Pa.C.S. § 5322(a)(3), (b), and (c).

In the present case, Ethicon contends the non-resident plaintiffs failed to establish their causes of action arose from Ethicon's limited connection with Pennsylvania.[5]  ***See*** Ethicon's Brief at 31.  To that end, Ethicon first argues the trial court's dismissal of Secant from the case – and its concomitant ruling

---

[5] We note the Products Liability Advisory Council filed an *amicus curie* brief in support of Ethicon.

that Secant was not a "manufacturer" of the mesh[6] – precludes any finding that Secant collaborated with Ethicon on the design of the mesh. ***See id.*** at 34. Furthermore, Ethicon utilized Secant only for "one step of the production process," *i.e.*, "knitting of sheets of mesh," which was "not a step that gave rise to the non-Pennsylvania [p]laintiffs' supposed injuries." ***Id.*** at 42.

Second, Ethicon insists none of the allegations in the Master Long-Form Complaint arise out of the process by which Secant knitted the mesh. ***See id.*** at 34. It further claims Secant did not contribute to the design of the mesh product, as is evident by the non-Pennsylvania plaintiffs' acknowledgment that Ethicon exercised "complete control over Secant's activities."[7] ***Id.*** at 36. Ethicon emphasizes both ***Bristol-Myers*** and Section 5322(c) require that "there must be a direct correlation between the conduct of the defendant in

---

[6] The trial court dismissed Secant from the litigation because it found Secant was a "biomaterials supplier" as defined in the Biomedical Access Assurance Act, 21 U.S.C. §§ 1601-1601. Order, 8/25/2014, at 1. The Act "insulates biomaterials suppliers from liability in medical device failure litigation, subject to a few narrow exceptions." ***Daley v. Smith & Nephew Inc.***, 321 F. Supp. 3d 891, 893 (E.D. Wis. 2018). However, as the trial court explained in its opinion, the Act "does not address the issue of personal jurisdiction." Trial Court Opinion, 5/18/2018, at 11.

[7] Rather, Ethicon insists its relationship with Secant is similar to the relationship between the California distributer and Bristol-Myers in the United States Supreme Court's decision – a relationship that the Court found did not support California's exercise of personal jurisdiction over Bristol-Myers in cases filed by non-California plaintiffs. ***See Bristol-Myers***, ***supra***, 137 S.Ct. at 1783 (Bristol-Myers contracted with California company solely to distribute drug nationwide; there was no allegation Bristol-Myers engaged in any "relevant acts" with company in California, nor evidence the non-resident plaintiffs took the drug distributed by the California company).

the state and the claims themselves[.]" *Id.* at 44. *See Bristol-Myers*, *supra*, 137 S.Ct. at 1780; 42 Pa.C.S. § 5322(c). Here, it argues the trial court "focused solely on the fact that one of the counts pleaded in the Master Long-Form Complaint – addressed generically to 'defendants' and at a time prior to Secant's dismissal – is a manufacturing-defect claim." Ethicon's Brief at 48-49. However, Ethicon maintains there has been no evidence presented to support such a claim and, in any event, personal jurisdiction must be analyzed on a claim-by-claim basis. *See id.* at 49-50.

Conversely, the non-resident plaintiffs argue, pursuant to the doctrine of *stare decisis*, we should affirm the trial court's ruling based upon this Court's binding decision in *Hammons*.[8] We agree. Although the *Hammons* opinion followed an appeal of a jury verdict, the relevant facts are the same as those herein. In fact, the non-resident plaintiffs cited evidence developed during the *Hammons* trial in their response to Ethicon's motion to dismiss filed after the trial court granted reconsideration, and during oral argument on the motion. *See* Supplemental Letter Brief in Opposition to the Motion to Dismiss, 9/7/2017, at 9-15; N.T., 9/13/2017, at 33-36, 44-48.

---

[8] "The doctrine of *stare decisis* maintains that for purposes of certainty and stability in the law, 'a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different.'" *In re Angeles Roca First Judicial Dist. Philadelphia Cty.*, 173 A.3d 1176, 1187 (Pa. 2017) (quotations omitted). Nevertheless, as Ethicon points out, "this Court is not obligated to follow a decision … that it knows to be based on an incorrect, and dispositive, conclusion of fact." Ethicon's Reply Brief at 23.

- 11 -

In its reply brief, Ethicon argues *Hammons* is not dispositive of the claim presented in this appeal for three reasons: (1) "*Hammons* stands on its own facts" because it was based upon a "trial record that is distinct from the record that exists here[;]" (2) "the *Hammons* opinion was premised on material misstatements of jurisdictionally significant facts[;]" and (3) the *Hammons* panel incorrectly placed the burden on Ethicon to "disprove personal jurisdiction." Ethicon's Reply Brief at 21-22 (emphasis removed). None of these arguments warrants relief.

The pertinent jurisdictional facts in *Hammons* and the case *sub judice* are the same. The plaintiffs in both cases are non-Pennsylvania residents, who were implanted with one of the eight pelvic mesh devices manufactured, in part, by Secant in Pennsylvania. Although some additional facts regarding clinical studies conducted in Pennsylvania were developed during the *Hammons* trial, the non-resident plaintiffs herein cited that evidence in support of their argument in opposition to Ethicon's motion to dismiss. Furthermore, we disagree with Ethicon's assertion that the *Hammons* decision was based upon "material misstatements" of fact.[9] Ethicon's Reply Brief at 22. The *Hammons* panel explained that Ethicon took a hands-on approach in its dealings with Secant - providing detailed specifications for knitting of the mesh, requiring Secant to test sample for compliance with its

_____

[9] This is an issue for appellate review by the Pennsylvania Supreme Court, should it grant Ethicon's petition for allowance of appeal in the *Hammons* case.

- 12 -

specifications, and travelling to Pennsylvania on "multiple occasions to observe the mesh production process." **Hammons**, **supra**, 190 A.3d at 1263. The design of the mesh, and in particular its inelasticity, is an important issue in this litigation. Ethicon's direct oversight of the knitting of the mesh in Pennsylvania, coupled with its reliance on clinical studies performed by a Pennsylvania gynecologist,[10] is sufficient to bring Ethicon within the jurisdiction of this Commonwealth. Lastly, with regard to Ethicon's contention that the **Hammons** panel incorrectly placed upon it the burden to disprove specific jurisdiction, we note the **Hammons** Court's decision was based upon the evidence presented by the non-resident plaintiff in support of her claim that Pennsylvania properly asserted specific jurisdiction over Ethicon. Accordingly, Ethicon has failed to demonstrate the decision of this Court in **Hammons** is not binding precedent upon the issue raised herein. Consequently, we conclude the trial court did not err in denying, in part, Ethicon's motion to dismiss, and we affirm the order on appeal.

Order affirmed.

_____

[10] **See Hammons**, **supra**, 190 A.3d at 1263-1264. We note Ethicon also contends **Hammons** is distinguishable because the trial court herein "did not attribute any jurisdictional significance" to the Pennsylvania gynecologist. Ethicon's Reply Brief at 15. However, as noted *supra*, the trial court authored its opinion before the decision in **Hammons** was filed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/19